# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No 21-0682V

|  |  |
|---|---|
| BRANDY DOUBLE,<br><br>              Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>              Respondent. | Chief Special Master Corcoran<br><br><br>Filed: June 27, 2024 |

*Renee J. Gentry*, The Law Office of Renee J. Gentry, Washington, DC, for Petitioner.

*Nina Ren*, U.S. Department of Justice, Washington, DC, for Respondent.

### **DECISION AWARDING DAMAGES**[1]

On January 12, 2021, Brandy Double filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine that was administered on January 13, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Respondent conceded the case, but the parties could not reconcile their valuations of Petitioner's past pain and suffering, and they submitted briefing on the subject. Petitioner's Motion for a Ruling on the Record on Damages filed May 4, 2023 (ECF No.

---

[1] Because this ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

36) (hereinafter "Brief"), Respondent's Response filed June 16, 2023 (ECF No. 37); Petitioner's Reply filed June 30, 2023 (ECF No. 38). The matter is now ripe for adjudication.

**For the following reasons, I find that Petitioner is entitled to compensation in the form of a lump sum payment of $105,168.16 (representing $105,000.00 for past pain and suffering, plus $168.16 for past unreimbursable expenses).**

## I. Authority

In another recent decision, I discussed at length the legal standard to be considered in determining SIRVA damages, taking into account prior compensation determinations within SPU. I fully adopt and hereby incorporate my prior discussion in Sections V - VII of *Crawford v. Sec'y of Health & Hum. Servs.*, No. 19-0544V, 2024 WL 1045147, at *12-22 (Fed. Cl. Spec. Mstr. Feb. 5, 2024).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[3]

## II. The Parties' Arguments

The parties agree that Petitioner should be awarded $168.16 for unreimbursable expenses. Brief at 2; Response at 2. Thus, the only area of disagreement is the amount of compensation which should be awarded for Petitioner's past/actual pain and suffering.

Petitioner seeks a pain and suffering award of $117,000.00. Brief at 2. Upon arguing for this sum, she recounts her receipt of one steroid injection, an MRI, 19 PT sessions total (4 before, and 15 after surgery), and surgical intervention over a nine-month period. Brief at 7. Petitioner characterized her ROM limitations as "significant," and her pain levels as consistently high, to the point of disrupting her sleep. *Id.* at 7 – 8. She was able to retain her desk job, but her work and home life were significantly changed.

---

[3] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

*Id.* at 8. Even air pressure on her skin causes pain of up to 7/10. *Id.* And post-surgery, she continues to experience extreme pain when reaching backwards, and periodic, momentary "catching" of the shoulder – and thus, she has established an injury duration of over three years. *Id.*

For comparable cases, Petitioner offers *Hunt*, *Gray*, and *Friberg*[4] - decisions featuring past pain and suffering awards ranging from $95,000.00 to $117,000.00. Brief at 6 – 7. She requests to be "appropriately compensated in line with comparable cases at $117,000.00," *id.* at 8 – essentially pointing to a single case in which that amount was awarded: *Friberg*.

In proffering a lower award of $72,500.00, Respondent emphasizes Petitioner's initial 46-day delay without any informal or formal treatment for her shoulder injury. Response at 5. Petitioner had "good" ROM and positive response to a steroid injection and four initial PT sessions. *Id.* Furthermore: "Although Petitioner was improving symptomatically, her MRI indicated a complete rotator cuff tear, which prompted Dr. White to perform a shoulder arthroscopy with arthroscopic rotator cuff repair, biceps tenodesis, and subacromial decompression [followed by…] another fifteen (15) PT sessions as rehabilitation from her surgery." *Id.* at 5 – 6.

Respondent also contends that Petitioner had "nearly fully recovered by November 13, 2020" – 8.5 months into the treatment course, and 10 months after vaccination. Response at 5-6. And Respondent observes that Petitioner's cited cases, as well as *Shelton*,[5] reflect more severe pain and suffering, and therefore "compel a lower award" herein. *Id.* at 6 – 7.

Petitioner replies that the steroid injection provided her only temporary pain relief, PT was unsuccessful, she reported "unbearable" pain, and had ongoing biceps tendinitis and subacromial impingement. Reply at 1 – 2. It was those factors, not only the MRI results of a rotator cuff tear, that prompted her orthopedist's surgical intervention. *Id.* Petitioner also maintains that at the end of her treatment course, she was noted to have intermittent pain (1 – 3/10) and limitations – and thus, should not be viewed as "fully

---

[4] Citing *Hunt v. Sec'y of Health & Hum. Servs.*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022) (awarding $95,000.00 for past pain and suffering); *Gray v. Sec'y of Health & Hum. Servs.*, No. 20-1708V, 2022 WL 6957013 (Fed. Cl. Spec. Mstr. Sept. 12, 2022) ($110,000.00); *Friberg v. Sec'y of Health & Hum. Servs.*, No. 19-1727V, 2022 WL 315827 (Fed. Cl. Spec. Mstr. July 6, 2022) ($117,000.00).

[5] Citing *Shelton v. Sec'y of Health & Hum. Servs.*, No. 19-0279V, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021) (awarding $97,500.00 for past pain and suffering).

recovered." *Id.* And her pain and suffering was more severe than what was established in *Hunt*, *Gray*, and *Shelton*. *Id.* at 2 – 3 (not mentioning *Friberg*).

### III.   Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing the analysis in this case, I review the record as a whole to include the medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A careful review of the evidence establishes that Ms. Double suffered a mild to moderate SIRVA injury for approximately 10 months. It is undisputed that after receiving the subject vaccine on January 13, 2020, she developed pain in the vaccinated shoulder within 48 hours. Petitioner recalls that she also developed a fever, body aches, and chills, and "stayed home the next day." Ex. 2 at ¶ 4.[6] However, she has not otherwise explained the apparent delay of *any* treatment attempts – even rest or over-the-counter medications – for over one month. *see* Ex. 1 at 117, 123. The available evidence on this point suggests that her initial pain was manageable, even if it progressed over time and eventually prompted her to seek medical attention.

However, at the orthopedics initial evaluation on February 27, 2020 (46 days post-vaccination), Petitioner was documented to have persistent pain, tenderness, limited range of motion ("ROM"), decreased strength, and impingement signs. She was assessed with "SIRVA." The notations of disrupted sleep, receipt of a steroid injection, and referral to PT corroborate that she was suffering moderate pain levels by this time. Ex. 1 at 117 – 118; *see also* Ex. 3 at 9 (PT initial evaluation 4 days later, reflecting pain rating of 1 – 7/10, and use of over-the-counter Aleve).

After four formal PT sessions, on April 29, 2020, she was "progressing well" and discharged to continue with her home exercise program ("HEP"). Ex. 3 at 28. But the findings of decreased and painful ROM – specifically active flexion of 155 degrees and

---

[6] Petitioner's Brief states that she stayed home from work for *multiple* days. Brief at 4. The affidavit more directly reflects Petitioner's personal recollections of events (which are not documented more contemporaneously).

4

passive abduction of 145 degrees – were unchanged, and she had not met her goals. *Id.*[7]

The subsequent orthopedics records, beginning about six weeks later, on June 8, 2020, reflect that PT had not been helpful, the steroid injection had worn off, and Petitioner had continued pain and decreased ROM, assessed as subacromial impingement. Ex. 1 at 91. The orthopedics team also noted weakness in the rotator cuff which could be due to pain and/or underlying pathology, prompting an MRI. *Id.* at 91 – 92.

The July 23, 2020, MRI visualized moderate degenerative changes at the AC joint, and no fluid in the subacromial-subdeltoid bursa. Ex. 1 at 59. Within the rotator cuff, there was a full-thickness tear within the central supraspinatus tendon near its attachment, surrounding soft tissue edema, and tendinopathy of the rotator cuff tendons. *Id.* Within the glenohumeral joint, there was degenerative changes of the superior labrum and edema at the humeral head. *Id.*

On August 14, 2020, Petitioner underwent a left shoulder arthroscopy with rotator cuff repair, biceps tenodesis, and subacromial decompression. Ex. 1 at 43 – 45; *see also id.* at 51 – 52, 56 – 59 (pre-operative consults). Respondent maintains this surgery was "prompted" by the MRI findings of the complete rotator cuff tear, Response at 5. That framing seems to question whether the surgical intervention was "from" the SIRVA, Section 15(a)(4). But Petitioner persuasively notes that her preceding, more conservative treatment efforts had not resolved her symptoms, and that the surgery addressed additional findings of subacromial impingement and tendinitis. Reply at 1 – 2. It has also been consistently recognized that shoulder pathology, specifically including rotator cuff tears, can be asymptomatic prior to the "inflammatory reaction" thought to be involved in a SIRVA. *See, e.g.*, *Chew v. Sec'y of Health & Hum. Servs.*, No. 20-1931V, 2024 WL 2130842, at *5 – 6 (Fed. Cl. Spec. Mstr. Apr. 10, 2024) (internal citations omitted). Overall, there is preponderant evidence to include the surgery as part of the SIRVA pain and suffering picture.

The record evidence further reflects that Petitioner was temporarily placed on weightbearing restrictions, and wore a sling, while recovering from her surgery. Ex. 1 at 39 – 41. By September 21, 2020, she was prescribed the sleep aid Ambien to help cope with nighttime pain. *Id.* at 36. She attended 15 post-operative PT sessions over approximately 6 weeks, *see generally* Ex. 3 at 29 – 87. At the last session on November 2, 2020, the "chief complaint" section still listed activities of daily living ("ADLs") as limited

---

[7] For adults, normal shoulder range of motion upon flexion ranges from 165 to 180 degrees; abduction from about 170 to 180 degrees; internal rotation from about 70 to 90 degrees; and external rotation from about 90 to 100 degrees. Cynthia C. Norkin & D. Joyce White, *Measurement of Joint Motion: A Guide to Goniometry* 72, 80, 84, 88, 5th ed. (2016).

due to shoulder precautions, current pain of 1/10, and pain ranging from 0 – 3/10. *Id.* at 85. But the assessment provides that she tolerated treatment well with "no complaints of pain," her ROM and strength continued to improve, and she was discharged from formal PT to continue with her HEP and return as needed. *Id.*

At the last orthopedics follow-up on November 13, 2020, it was again recorded that Petitioner was doing "extremely well and ha[d] no pain," essentially normal ROM, and some mild weakness. Ex. 1 at 14. She would continue her HEP, advance her activities as tolerated, and return if needed. *Id.* No further medical records have been filed.

As of February 2021, Petitioner alleged ongoing left arm weakness, as well as pain that disruptive to dressing and undressing, sleep, cooking, washing dishes, and driving. Ex. 2 at ¶ 11. She denied "any pain meds other than Aleve to help with pain and inflammation." *Id.*[8]

Overall, Petitioner was indeed substantially improved by the time of her formal PT discharge and last orthopedics follow-up evaluation in November 2020 – ten months post-vaccination. Those records, supplemented by Petitioner's affidavit from just three months later, point to some ongoing limitations – but those have not been shown to be particularly severe or disruptive to influence the pain and suffering award. The characterization of an injury lasting for over *three years*, within Petitioner's briefing, has even less support.

Turning to the parties' cited cases, *Friberg* includes some similarities (e.g., one steroid injection delivering temporary pain relief, surgery including repair of a full rotator cuff tear, and a substantial to complete recovery by about 10 months post-vaccination). *Friberg*, 2022 WL 3152827. But *Friberg* featured considerably more PT sessions (a total of 42, compared to 19 here), as well as slightly earlier treatment (starting 32 days post-vaccination, compared to 46 days here). Response at 7. And Petitioner does not discuss *Friberg* in her Reply Brief – suggesting at least a tacit acknowledgment that her pain and suffering is less severe, and warrants less than the $117,000.00 awarded in that case.

*Gray* is also similar. Although both parties herein suggest that the *Gray* petitioner's refusal of a steroid injection is significant, he received prescription pain medications which are not featured in this case. The more significant distinction is the *Gray* petitioner's more extensive formal PT course – with a total of 32 sessions. *Gray*, 2022 WL 6957013.

---

[8] Petitioner's Brief at 2 references her second affidavit prepared in March 2022, Ex. 16. The second affidavit only addresses a January 2020 medical record notation of "hand and arm tingling," and is not relevant to the pain and suffering assessment.

*Hunt* and *Shelton* are not useful comparables for this matter. It has previously been noted that both stand as "outlier determinations, and rare instances of deviating from the above $100,000.00 'norm' for SIRVA cases involving surgery." *Laurette v. Sec'y of Health & Hum. Servs.*, No. 19-1047V, 2024 WL 1741611, at *5 (Fed. Cl. Spec. Mstr. Mar. 25, 2024); *see also, e.g.*, *Olson v. Sec'y of Health & Hum. Servs.*, No. 21-0408V, 2024 WL 1521634, at *4 (Fed. Cl. Spec. Mstr. Mar. 4, 2024) (characterizing the cases as "outliers in the context of SIRVA damages"); *Gao v. Sec'y of Health & Hum. Servs.*, No. 21-1884V, 2023 WL 6182455, at *3 (Fed. Cl. Spec. Mstr. Aug. 18, 2023) (emphasizing that *Hunt* and *Shelton* were "*sui generis* instances of a sub-six figure award in SIRVA cases featuring surgery").

"In short, the policy goals of the Vaccine Program are best served if outcomes in common cases (like SIRVA vaccine injury claims) are predictable and/or subject to some uniformity – and it has been my determination that surgery cases reasonably present a degree of suffering justifying a six-figure award. (Otherwise, adjustments are always considered and made to account for the facts of each case, and in some instances even SIRVA surgery cases result in lower pain and suffering awards)." *Richardson v. Sec'y of Health & Hum. Servs.*, No. 20-0674V, 2023 WL 6180813, at *8 (Fed. Cl. Spec. Mstr. Aug. 16, 2023).

Here, Ms. Double's SIRVA appears to be somewhat on the mild end of comparable cases requiring surgery – but not so exceptional to warrant a departure below the six-figure norm (and certainly not even lower such that it might fit Respondent's proposal of $72,500.00). Based on all of the circumstances and evidence submitted, and in the interest of rough justice, I find that her past pain and suffering warrants an award of $105,000.00.

## Conclusion

For all the reasons discussed above and based on consideration of the entire record, **Petitioner is entitled to damages in the form of a lump sum payment of $105,168.16 (representing $105,000.00 for past pain and suffering, and $168.16 for past unreimbursable expenses).**

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[9]

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master